629 F.Supp. 317 (1986)
FEDERAL ELECTION COMMISSION, Plaintiff,
v.
AMERICAN INTERNATIONAL DEMOGRAPHIC SERVICES, INC., a/k/a Kapture, Inc. and Ernest Halter, Defendants.
Civ. A. No. 85-0437-A.
United States District Court, E.D. Virginia, Alexandria Division.
February 10, 1986.
*318 Charles W. Snyder, Federal Election Com'n, Washington, D.C., for plaintiff.
Charles Aschmann, Jr., Alexandria, Va., for defendants.

MEMORANDUM OPINION
CACHERIS, District Judge.
This case involves the commercial use of two Federal Election Commission ("FEC") tapes containing the names of potential contributors to political organizations. The FEC has brought a Complaint against the defendants American International Demographic Services, Inc. ("AIDS") and Ernest Halter ("Halter") seeking an injunction, declaratory relief, and a civil fine for violations of the Federal Election Campaign Act of 1971, as amended ("Act"). For reasons set forth below the Judgment is entered in favor of the FEC and against the defendants AIDS and Halter.

I
After reviewing the evidence and weighing the credibility of the witnesses, the court makes the following findings of fact:
AIDS, a/k/a KAPTURE, Inc. is the name of a company that Halter started in 1980. (Trial Transcript at 12).
The purpose of AIDS was to be the owning company of certain mailing lists that Halter wanted to market. (Id. at 13).
On April 2, 1982, Halter delivered ten tapes to Meyer T. Cohen of Working Names, Inc., a list management company.[1] (Id. at 28, 132). These tapes belonged to Demographic Systems, Inc. ("DSI") and included two FEC tapes. (Id. at 28).
This transfer was made pursuant to an April 2, 1982, management agreement between Cohen and Halter. (Plaintiff's Exhibit 10). Halter gave Cohen the names and told him to put them into groups. (Trial Transcript at 21).
On April 2, 1982, four other agreements were entered into between AIDS and Working Names, Inc., to manage the new groups. The lists were identified as Carriage Trade Conservatives, Flag-Raising Conservative Contributors, Solid Conservative Contributors and Carriage Trade Liberals.[2] (Plaintiff's Exhibit 1).
Lois Halter, Ernest Halter's wife, founded a political action committee called Voter Information Council ("VIC PAC"). (Deposition of Lois Jean G. Halter, November 22, 1985, at 16). On April 29, 1982, Mrs. Halter requested tapes from the FEC through VIC PAC. (Trial Transcript at 34). Halter delivered the letter request to the FEC and picked up the tapes. (Id. at 34). Halter immediately delivered the FEC tapes to Cohen. (Id. at 41).
Mrs. Halter claims she sought these lists to eliminate the undeliverables from the files she or VIC PAC owned. (Deposition of Lois G. Halter, November 2, 1985, at 32). Eliminating undeliverables is accomplished by comparing the lists you have against the FEC lists. If the name on the list you have is on the FEC list, the person probably still exists, is at the same address, and is still a viable person to mail to. (Id. at 40). Those that do not match are eliminated.
*319 Halter told Cohen that he, Halter, owned the tapes and had the right, authority and control over them and therefore Cohen could sell them. (Trial Transcript at 140-41, 171).
Cohen claims he took the tapes to Saturn Corp. to have them dumped,[3] pursuant to Halter's instructions. (Id. at 140, 145).
Halter's testimony differs in that he claims he gave the tapes to Working Names, Inc. to have them purged.[4]
The court finds Cohen to be a more credible witness on this issue and therefore holds the tapes were given by Halter to Working Names, Inc. to have them dumped and marketed to brokers and mailers.
The National Republican Congressional Committee ("NRCC") is a committee registered with the FEC and provides periodic reports to the FEC on NRCC receipts and expenditures. (Id. at 69). Wyatt Stewart, Financial Director of the NRCC, and David Paul Himes, Deputy Director of Finance of the NRCC, testified that the NRCC included salt names[5] with the list of contributors submitted to the FEC.
The NRCC included the salt name of Kane E. Orsell in a list of contributors submitted to the FEC in 1980. (Id. at 72). This fictitious name, Kane Orsell, received a direct mail package from the American Legislative Exchange Council ("ALEC"). (Plaintiff's Exhibit 6). The mailing label included a mail code[6] identifying the mailing list as the Carriage Trade Conservatives.
ALEC contracted with North American Marketing Corp. ("North American") to do a mailing. North American ordered lists from the Old Dominion List Company ("Old Dominion"). (Deposition of Robert C. Duval, November 13, 1985).
Old Dominion ordered the Carriage Trade Conservatives list from Working Names, Inc. for ALEC. (Deposition of Mary B. Richardson, November 13, 1985).
Contributor lists are transferred between organizations, but they never contain the fictitious names which are filed with the FEC. (Trial Transcript at 84.)
On September 10, 1982, at a meeting between Halter, David Humes, Wyatt Stewart, and Larry Holland, legal counsel to the NRCC, Halter agreed to do several things: first, to take the list off the market and confirm this action in writing, second, to write all the people that had rented the names and tell them there were improper names on the list, third, to give NRCC a list of the names and where they had come from, and fourth, to provide a list of people that had rented the names. (Id. at 91). Although Halter agreed to do these things, he never did any of them. (Id. at 91)
Halter was notified on or about September 28, 1982, that a Complaint had been filed against him with the FEC by the NRCC. (Id. at 47, Plaintiff's Exhibit 6).

II
The FEC is the agency of the United States government empowered with the exclusive and primary jurisdiction with respect to the administration, interpretation and civil enforcement of the Act. 2 U.S.C. §§ 437c(b)(1), 437d(a) and 437g. It is authorized to institute investigations of possible violations of the Act. 2 U.S.C. §§ 437g(a)(1) and (2).
Furthermore, the FEC has exclusive jurisdiction to initiate civil actions in the United States district courts to obtain judicial enforcement of the Act. 2 U.S.C. §§ 437c(b)(1) and 437d(e). The FEC has *320 satisfied all jurisdictional requirements pre-requisite to filing this suit.
2 U.S.C. § 438(a)(4) provides as follows: The Commission shall
(4) within 48 hours after the time of the receipt by the Commission of reports and statements filed with it, make them available for public inspection, and copying, at the expense of the person requesting such copying, except that any information copied from such reports or statements may not be sold or used by any person for the purpose of soliciting contributions or for commercial purposes, other than using the name and address of any political committee to solicit contributions from such committee. A political committee may submit 10 pseudonyms on each report filed in order to protect against the illegal use of names and addresses of contributors, provided such committee attaches a list of such pseudonyms to the appropriate report. The Clerk, Secretary, or the Commission shall exclude these lists from the public record.
2 U.S.C.A. § 438(a)(4) (West 1985).
The defendants willfully violated the Act by having Working Names manage the tapes for the purpose of renting them out to brokers and mailers. Thus, the defendants used the tapes for commercial purposes in violation of 2 U.S.C. § 438(a)(4).

III
The next issue is the appropriate remedy. The Act provides:
In any civil action for relief instituted by the Commission under subparagraph (A), if the court determines that the Commission has established that the person involved in such civil action has committed a knowing and willful violation of this Act ... the court may impose a civil penalty which does not exceed the greater of $10,000 or an amount equal to 200 percent of any contribution or expenditure involved in such violation.
2 U.S.C.A. § 437g(a)(6)(C) (West 1985).
The court finds that a fine of $3,500 is appropriate under the circumstances. The court rejects the FEC argument that the defendants' refusal to conciliate mandates a heavier fine.
The FEC is also entitled to an injunction. 2 U.S.C.A. § 437g(a)(6)(A).
An appropriate Order shall issue.
NOTES
[1] A list manager will publicize and rent mailing lists that are owned by individuals. The list manager brings the mailing lists to the attention of brokers and mailers, and receives a fee for his services. (Trial Transcript at 132).
[2] The titles were given to the lists by Meyer T. Cohen and had no great correlation to the names and addresses that subsequently went on the list. (Trial Transcript at 138).
[3] Dumping is a low cost, unedited putting out on paper of the contents of a tape file. (Trial Transcript at 10).
[4] Purge means to remove undeliverable names from mailing lists.
[5] A salt name is a fictitious name which is included in a mailing list. This provides a legal way to protect mailing lists which are filed with the FEC from unauthorized use. (Trial Transcript at 86).
[6] A mail code identifies from which list a particular name was derived. This enables a mailing organization to know what kind of income or response a certain list produced. (Trial Transcript at 74).